# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| **ANTHONY J. HOFFMAN**  ) | |
| ) | |
| **Plaintiff,**  ) | |
| ) | |
| **v.**  ) | Civil Action No.: _____ |
| ) | |
| **GC SERVICES LIMITED PARTNERSHIP** ) | |
| **KRISTION M. TIMBROOK, JOHN DOE,** ) | <u>Jury Trial Demanded</u> |
| **RUSSELL DOE , JAMES DOE, and** ) | |
| **JACK DOE,** ) | |
| ) | |
| **Defendants.** ) | |

# COMPLAINT

## I.  INTRODUCTION

1. This action arises out of Defendants and their agents repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") and out of the invasions of Plaintiff's personal and financial privacy by these Defendants and their agents in their illegal efforts to collect a consumer debt.

## II.  JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## III.    **PARTIES**

4.    Plaintiff Anthony J. Hoffman (hereinafter "Plaintiff") is a natural person who resides in Claiborne County, Tennessee and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.    Defendant GC Services Limited Partnership (hereinafter "GC Services") is a for-profit limited partnership organized in Delaware, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a "collection service" as that term is defined by Tenn. Code Ann. § 62-20-102(3) and a registered foreign business entity doing business in Tennessee that maintains CT Corporation System, 800 S. Gay St., Suite 2021, Knoxville, TN 37929-9710 as a registered agent in Tennessee for service of process.

6.    Defendant Kristion M. Timbrook (hereinafter "Timbrook") is a natural person who is employed by GC Services as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and can be served at her employer's address at 8121 NW Expressway, Oklahoma City, OK 73162 or her home address.

7.    Defendant John Doe (hereinafter "John Doe") is a natural person who is employed by GC Services as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and he presently cannot be served until his true identity is determined.

8.    Defendant Russell Doe (hereinafter "Russell Doe") is a natural person who is employed by GC Services as a collection agent and is a "debt collector" as that term

is defined by 15 U.S.C. § 1692a(6) and he presently cannot be served until his true identity is determined.

9.    Defendant James Doe (hereinafter "James Doe") is a natural person who is employed by GC Services as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and he presently cannot be served until his true identity is determined.

10.    Defendant Jack Doe (hereinafter "Jack Doe") is a natural person who is employed by GC Services as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and he presently cannot be served until his true identity is determined.

## IV.    FACTUAL ALLEGATIONS

11.    On or about October 10, 2006, Plaintiff sold a laptop computer he had listed for sale on eBay and, after being advised by an employee and/or agent of PayPal to wait until the funds were in his PayPal account to make sure that it was not a scam, shipped the computer to the purchaser and was notified by PayPal on or about October 11, 2006 that he would receive payment for the computer via electronic funds transfer in 3 to 4 days.

12.    Plaintiff received the funds from PayPal in a timely manner and after receipt of the funds, Plaintiff was notified by PayPal on or about October 25, 2006 that he may have been the recipient of unauthorized funds and in November 2006 Plaintiff was informed that his PayPal account had a negative balance and requested that he return the funds to his account because of the alleged fraudulent activity of the

purchaser and, therefore, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

13. Sometime prior to June 22, 2007, the Plaintiff's alleged debt was consigned, placed or otherwise transferred to GC Services for collection from Plaintiff.

### August 2007 Collection Calls

14. In approximately August 2007, Plaintiff's mother and father started receiving automated telephone at their home from GC Services that would ask for Plaintiff and ask that he return the telephone call.

15. Each telephone call during this time period was an attempt to collect the alleged debt and each telephone call was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

16. After approximately 8 to 10 of these calls, Plaintiff's mother answered the telephone in an attempt to get whoever was calling to stop.

17. When Plaintiff's mother answered the call, a lady who identified herself as Timbrook, stated that she was calling from GC Services and that she was calling because Plaintiff owed money to PayPal.

18. Plaintiff's mother explained to Timbrook Plaintiff was currently serving in the military overseas in Iraq, to which Timbrook replied, "Anthony has to and needs to pay this bill to PayPal, because it's been since June and it needs to be taken care of ASAP."

4

19.  These communications by Timbrook were collection communications in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### September 2007 Collection Calls

20.  In approximately September 2007, Plaintiff's mother and father continued to receive the automated telephone calls at their home from GC Services that would ask for Plaintiff and ask that he return the telephone call.

21.  Each telephone call during this time period was an attempt to collect the alleged debt and each telephone call was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

22.  After another approximately 8 to 10 more calls, Plaintiff's mother again answered the telephone in an attempt to get the telephone calls to stop and again spoke with Timbrook.

23.  During this telephone conversation, Plaintiff's mother asked Timbrook how Plaintiff could owe money to PayPal since he would not be able to get his computer back and, if he repaid the money, he would be out both the computer and the money.

24.  Timbrook stated that Plaintiff owed the money to PayPal because he took $1,626.43 out of his PayPal account that he should not have because the laptop computer was bought with a stolen credit card.

25.  These communications by Timbrook were collection communications in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15

5

U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### *October 2007 Collection Calls Prior to October 29, 2007*

26. In approximately October 2007, the Plaintiff's mother and father continued to receive telephone calls at their home from Timbrook.

27. Each telephone call during this time period was an attempt to collect the alleged debt and each telephone call was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

28. In one of these conversations with Plaintiff's mother, Timbrook asked her to email Plaintiff and ask him if he could "pay $1,140.00 and take care of this debt".

29. In another telephone conversation in October, Plaintiff's father spoke with Timbrook who told him that the "amount of $1,140.00 would still be acceptable to take care of this matter", but that this matter had to be resolved as soon as possible.

30. On October 24, 2007, at approximately 12:00 p.m., Plaintiff's mother and father received another telephone call at their home from Timbrook.

31. Plaintiff's mother answered the telephone, Timbrook asked to speak to Plaintiff and, after Plaintiff's mother told Timbrook that Plaintiff was in Iraq, Timbrook replied, "He's in Iraq?"

32. Plaintiff's mother then explained that she had told Timbrook in an earlier telephone conversation that Plaintiff was in the military service in Iraq, Timbrook replied, "Well, I guess I need to turn this over and say that refused to pay and stated that she would hold this account until Monday, October 29th and then hung up.

6

33. Later that same day, October 24, 2007, at approximately 2:30 p.m., Plaintiff's mother and father received another automated telephone call at their home from GC Services asking for Plaintiff.

34. These communications by Timbrook were collection communications in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### *October 29, 2007 Collection Call*

35. On October 29, 2007, at approximately 8:58 p.m., Plaintiff's mother and father received a telephone call at their home from telephone number 405-722-0778 and, when Plaintiff's mother answered the telephone, she again spoke with Timbrook.

36. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

37. Upon information and belief, telephone number 405-722-0778 is a telephone number that has been assigned to GC Services.

38. During the October 29, 2007 telephone conversation, which lasted an estimated 35 minutes, Timbrook first told Plaintiff's mother that "they have authorized me to accept the $1,220.00 as a settlement."

39. Plaintiff's mother then stated that the settlement offer before was $1,140.00 and Timbrook replied that PayPal had changed their offer to 75% of the amount owed,

but, since Plaintiff was in Iraq, she could go to her supervisor and "tell him, you know, what the story is about him and he may get it down to half".

40. After being told again by Plaintiff's mother that she didn't know what to do about the money that GC Services was trying to collect from Plaintiff, Timbrook stated, "Well, you might send him an email and it's been here now since the 20th of June . . . [and] well, you tell him that I said maybe half and see what he says. And he can call me from over there too. People call me all the time from over there."

41. Timbrook then told Plaintiff's mother that Plaintiff "needs to pay this. It's not fair that PayPal should be left high & dry. There is no protection for items sold overseas."

42. Timbrook then asked Plaintiff's mother if she still had GC Services toll-free number and, when Plaintiff's mother replied that she did, Timbrook said, "Well, then, just give it to him".

43. Timbrook then told Plaintiff's mother that she "would go ahead and write it up, but it may go on his credit bureau the end of this month, because it's been setting here now since June and I don't think that I can hold it any further without it going, without talking to him, email or something . . . ."

44. This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

45.  On October 30, 2007, at approximately 1:15 p.m., Plaintiff's mother and father received a call at their home from telephone number 866-465-7931, and, when Plaintiff's mother answered the telephone, she again spoke with Timbrook.

46.  This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

47.  Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

48.  Timbrook first asked Plaintiff's mother if Timbrook had spoken with her on October 29th and Plaintiff's mother confirmed that she had.

49.  Timbrook then apologized for the automated dialer calling back again and then asked Plaintiff's mother "Is your son Anthony or is that your grandson?" and Plaintiff's mother replied that it was her son.

50.  Timbrook then asked Plaintiff's mother if she had sent Plaintiff an email yet and, Plaintiff's mother replied that she had.

51.  Timbrook then stated, "I found that he had, uh, that he's got an address in Kentucky, does he live there, too?", and, in response, Plaintiff's mother explained that Plaintiff did not live in Kentucky and that he moved out of that address before he went to Iraq.

9

52. Timbrook then said, "Okay. Well, that was just, the dialer was calling numbers this morning, it just picked up yours, so disregard that call" and then thanked Plaintiff's mother and hung up.

53. This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### *November 14, 2007 Collection Call*

54. On or about November 14, 2007, at approximately 10:30 a.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 866-465-7931.

55. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

56. The voice mail was a message from Timbrook requesting that Plaintiff call her about the alleged debt.

57. Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

58. This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### December 1, 2007 Collection Call

59. On or about December 1, 2007, at approximately 12:32 p.m., Plaintiff's mother and father received an automated message on their home answering machine which asked to speak to Plaintiff and asked him to call back to telephone number 877-518-6509.

60. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

61. Upon information and belief, telephone number 877-518-6509 is a telephone number that has been assigned to GC Services.

62. This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### December 5, 2007, 10:58 a.m. Collection Call

63. On or about December 5, 2007, at approximately 10:58 a.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 866-465-7931.

64. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

65. The voice mail was a message from Timbrook requesting that Plaintiff call her about the alleged debt.

66. Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

67. This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### December 5, 2007, 11:31 a.m. Collection Call

68. On or about December 5, 2007, at approximately 10:58 a.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 866-465-7931.

69. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

70. The voice mail was a message from Timbrook requesting that Plaintiff call her about the alleged debt.

71. Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

72. This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

*December 10, 2007 Collection Call*

73.    On or about December 10, 2007, at approximately 3:01 p.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 866-465-7931.

74.    This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

75.    The voice mail was a message from Timbrook requesting that Plaintiff call her about the alleged debt.

76.    Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

77.    This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

*December 14, 2007, 2:41 p.m. Collection Call*

78.    On or about December 14, 2007, at approximately 2:41 p.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 866-465-7931.

79.    This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

Case 3:08-cv-00255-TWP-CCS   Document 1   Filed 07/03/08   Page 13 of 27   PageID #: 13

80. The voice mail was a message from Timbrook requesting that Plaintiff call her about the alleged debt.

81. Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

82. This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### December 14, 2007, 3:36 p.m. Collection Call

83. On or about December 14, 2007, at approximately 3:36 p.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 866-465-7931.

84. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

85. The voice mail was a message from Timbrook requesting that Plaintiff call her about the alleged debt.

86. Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

87. This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15

14

U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### December 17, 2007 Collection Call

88.　On or about December 17, 2007, at approximately 6:23 p.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 866-465-7931.

89.　This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

90.　The voice mail was a message from Timbrook requesting that Plaintiff call her about the alleged debt.

91.　Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

92.　This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### December 18, 2007 Collection Call

93.　On or about December 18, 2007, at approximately 8:28 p.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 405-728-1704.

94. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

95. The voice mail was a message from Timbrook requesting that Plaintiff call her about the alleged debt.

96. Upon information and belief, telephone number 405-728-1704 is a telephone number that has been assigned to GC Services.

97. This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

### December 21, 2007 Collection Call

98. On or about December 21, 2007, at approximately 11:23 a.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 877-518-6509.

99. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

100. The voice mail was a message from Timbrook requesting that Plaintiff call her about the alleged debt.

101.   Upon information and belief, telephone number 877-518-6509 is a telephone number that has been assigned to GC Services.

102.   This communication by Timbrook was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

*First December 27, 2007 Collection Call*

103.   On or about December 27, 2007, at approximately 10:57 a.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 866-465-7931.

104.   This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

105.   The voice mail was a message from a person who failed to identify himself (John Doe), requesting that Plaintiff call him about the alleged debt.

106.   Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

107.   This communication by John Doe was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(10), and 1692f, amongst others.

### Second December 27, 2007 Collection Call

108. In response to the voice mail left on Plaintiff's parents' home answering machine on or about December 27, 2007, at approximately 10:57 a.m., Plaintiff's mother returned the telephone call.

109. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

110. Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

111. When Plaintiff's mother returned the telephone call she spoke with John Doe, who still failed to identify himself, and told John Doe that Plaintiff was currently in the service in Iraq.

112. John Doe replied, "Okay" and hung up.

113. This communication by John Doe was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), and 1692d(6), amongst others.

### Third December 27, 2007 Collection Call

114. On December 27, 2007, at approximately 11:51 a.m., Plaintiff's mother and father received a call at their home from telephone number 866-465-7931, and, when Plaintiff's mother answered the telephone, she spoke with a person who identified himself only as Russell (Russell Doe).

18

115. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

116. Upon information and belief, telephone number 866-465-7931 is a telephone number that has been assigned to GC Services.

117. When Plaintiff's mother told Russell Doe that Plaintiff was in the service in Iraq, Russell Doe replied that Plaintiff should call PayPal and that he would place Plaintiff's "account on hold until he gets back from Iraq."

118. This communication by Russell Doe was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(10), and 1692f, amongst others.

### December 28, 2007 Collection Call

119. On December 28, 2007, at approximately 11:31 a.m., Plaintiff's mother and father received a call at their home from telephone number 877-518-6509, and, when Plaintiff's mother answered the telephone, she spoke with a person who failed to identify himself (James Doe).

120. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

121. Upon information and belief, telephone number 877-518-6509 is a telephone number that has been assigned to GC Services.

122. When Plaintiff's spoke with James Doe, she had difficulty in understanding everything that James Doe said, but he did say that Plaintiff "needs to call on this account. He needs to take care of as soon as possible."

123. This communication by James Doe was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(10), and 1692f, amongst others.

### January 5, 2008 Collection Call

124. On or about January 5, 2008, at approximately 10:24 a.m., a voice mail was left on Plaintiff's parents' home answering machine from telephone number 877-518-6509.

125. This telephone call was an attempt to collect the alleged debt and was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

126. The voice mail was a message from a person who failed to identify himself (Jack Doe), requesting that Plaintiff call him about the alleged debt.

127. Upon information and belief, telephone number 877-518-6509 is a telephone number that has been assigned to GC Services.

128. This communication by Jack Doe was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15

20

U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(10), and 1692f, amongst others.

## *Summary*

129. The above-detailed conduct by Defendants, including, but not limited to communications with Plaintiff's mother and father in connection with the collection of the debt without the prior consent of the Plaintiff, causing Plaintiff's parents' home telephone to ring repeatedly with the intent to annoy and harass Plaintiff's parents, and placing numerous telephone calls without meaningful disclosure of their identity, are abusive, harassing, false, misleading, and unfair communications, acts, omissions, and/or practices used by Defendants in illegally attempting to collect a debt from Plaintiff in violation of numerous and multiple provisions of the FDCPA including, but not limited to the above-cited provisions of the FDCPA, as well as an invasion of Plaintiff's privacy by revelation of private financial facts to third parties.

130. Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of emotional distress caused by anger, anxiety, fear, frustration, upset, humiliation, and embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal and financial privacy by revelation of private financial facts to third parties.

## *Respondeat Superior Liability*

131. The acts and omissions of Defendants Timbrook, John Doe, Russell Doe, James Doe, Jack Doe, and the other debt collectors employed as agents by Defendant GC

Services who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant GC Services.

132. The acts and omissions by Defendants Timbrook, John Doe, Russell Doe, James Doe, Jack Doe and the other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant GC Services in collecting consumer debts.

133. By committing these acts and omissions against Plaintiff, Defendants Timbrook, John Doe, Russell Doe, James Doe, Jack Doe and the other debt collectors were motivated to benefit their principal, Defendant GC Services.

134. Defendant GC Services is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal law by its collection employees including, but not limited to violations of the FDCPA, and Tennessee tort law, in their attempts to collect this alleged debt from Plaintiff.

## V.     TRIAL BY JURY

135. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed.R.Civ.P. 38.

## VI.     CAUSES OF ACTION

### COUNT I.

# VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692 *et seq.*

136. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

137. The foregoing acts and omissions of each and every Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692 *et seq.*, with respect to Plaintiff.

138. As a result of each and every Defendant and their agents' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant herein.

## COUNT II.

## INVASION OF PRIVACY BY REVELATION OF PRIVATE FINANCIAL FACTS TO THIRD PARTIES

139. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

140. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

141. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates a broad range of "financial institutions" whose definition includes debt collectors, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

142. Defendants and/or their agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and private concerns or affairs of Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

143. Defendants and/or their agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and private concerns or affairs of Plaintiff, namely, by repeatedly and unlawfully disclosing information about this debt to third parties, and thereby invaded Plaintiff's right to financial privacy.

144. Defendants and/or their agents intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

145. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, and or private concerns or affairs, and private financial information.

146. The conduct of these Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by these Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

147. As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff;

## COUNT II.

## INVASION OF PRIVACY BY REVELATION OF PRIVATE FINANCIAL FACTS TO THIRD PARTIES

- for an award of actual damages from each and every Defendant for the emotional distress suffered as a result of the intentional and/or negligent FDCPA violations and intentional and/or negligent invasions of privacy in an amount to be determined at trial and for Plaintiff; and

- for such other and further relief as may be just and proper.

07/01/08                                Respectfully submitted,

**ANTHONY J. HOFFMAN**

Alan C. Lee, Esq.
Attorney for Plaintiff
BPR #012700
P. O. Box 1357
Morristown, TN 37816-1357
(423) 581-0924
info@alanlee.com

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF _Kentucky_     )
COUNTY OF _Madison_    )

Plaintiff Anthony J. Hoffman, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Date: _25/Jun/08_      By: _____
                              Anthony J. Hoffman

Subscribed and sworn to before me this _25_[d] day of June 2008.

_Mutz J. Kelley_
Notary Public
_State - at - Large_

_Feb 5-2009_